# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
Filed: July 29, 2026

| | | |
|---|---|---|
| TIFFANY REITZ, | * | PUBLISHED |
| Petitioner, | * | No. 21-1980V |
| v. | * | Special Master Nora Beth Dorsey |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | Dismissal; Tetanus, Diphtheria, Acellular Pertussis ("Tdap") Vaccines; Shoulder Injury Related to Vaccine Administration ("SIRVA"). |
| Respondent. | * | |

David John Carney, Green & Schafle LLC, Philadelphia, PA, for Petitioner.
Madelyn Weeks, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION**[1]

On October 7, 2021, Tiffany Reitz ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2018).[2] Petitioner alleged that she suffered a Table (or alternatively a causation-in-fact) shoulder injury related to vaccine administration ("SIRVA") as a result of receiving a tetanus, diphtheria, and acellular pertussis ("Tdap") vaccine on August 24, 2020. Petition at 1, 9 (ECF No. 1). Respondent argued against compensation, stating "this case is not

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

appropriate for compensation under the [Vaccine] Act." Respondent's Report ("Resp. Rept.") at 2 (ECF No. 21).

After carefully analyzing and weighing the evidence presented in this case in accordance with the applicable legal standards,[3] the undersigned finds that Petitioner has failed to provide preponderant evidence of a Table or causation-in-fact claim that the Tdap vaccination caused her to develop a SIRVA. Accordingly, Petitioner is not entitled to compensation and the petition must be dismissed.

## I. PROCEDURAL BACKGROUND

On October 7, 2021, Petitioner filed her petition followed by medical records from October 2021 to January 2022. Petition; Petitioner's Exhibits ("Pet. Exs.") 1-8. Thereafter, this case was assigned to the Special Processing Unit ("SPU"). Activation and Reassignment Order dated Jan. 19, 2022 (ECF No. 10).

On May 5, 2023, Respondent filed his Rule 4(c) report, arguing against compensation. Resp. Rept. at 2. Respondent argued that to demonstrate a SIRVA injury, Petitioner must show that no other condition or abnormality is present that would explain Petitioner's symptoms. Id. at 5. But in Respondent's view, the medical records in this case establish that Petitioner's SIRVA was exercise-related. Id. Specifically, Respondent argued

> [t]hroughout the course of her treatment, [P]etitioner implicated an exercise injury as the cause of her shoulder pain—first to urgent care, then to her physical therapist, and finally to an orthopedist. In fact, [P]etitioner reported to her orthopedist that she both landed on her left shoulder and a weight bench also fell on her left shoulder. Further, [P]etitioner did not believe the Tdap vaccine contributed to her pain. Petitioner has not identified any medical opinion attributing her left shoulder pain to a vaccine injury. Because the records reflect an alternative cause that could explain [P]etitioner's symptoms, [P]etitioner cannot satisfy this element of a SIRVA claim.

Id. (internal citations omitted). Thus, Respondent maintained that the Petition warrants dismissal. Id.

Considering the issues raised by Respondent, and after a preliminary review of Petitioner's medical records, the Chief Special Master found, as set forth in an Order to Show Cause, there was not preponderant evidence that Petitioner's injury was caused by the Tdap

[3] While the undersigned has reviewed all the information filed in this case, only those filings and records that are most relevant will be discussed. See Moriarty v. Sec'y of Health & Hum. Servs., 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though [s]he does not explicitly reference such evidence in h[er] decision."); Simanski v. Sec'y of Health & Hum. Servs., 115 Fed. Cl. 407, 436 (2014) ("[A] Special Master is 'not required to discuss every piece of evidence or testimony in her decision.'" (citation omitted)), aff'd, 601 F. App'x 982 (Fed. Cir. 2015); Paterek v. Sec'y of Health & Hum. Servs., 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

vaccine she received on August 24, 2020. Order to Show Cause dated Sept. 19, 2023, at 3 (ECF No. 22). In other words, there was a condition present (several exercise-related injuries and/or a fall onto Petitioner's left shoulder) that explained Petitioner's condition. Id. In addition, Petitioner, on at least one occasion, stated that she did not believe her injury was caused by her Tdap vaccine. Id.

In the Order to Show Cause, the Chief Special Master indicated that at a minimum, the evidence suggested that this claim could not be viable as a Table SIRVA. Order to Show Cause at 4. Additionally, the facts were likely unsupportive of any vaccine injury, even if maintained as a causation-in-fact claim. Id. But before dismissing the petition, the Chief Special Master afforded Petitioner one last opportunity to show cause explaining why dismissal of her claim was not appropriate. Id. The Chief Special Master explained that Petitioner would need to offer some additional evidence or other highly persuasive reason why dismissal was not called for (and Petitioner should consider voluntary dismissal at this point, before additional unnecessary fees are generated). Id.

Petitioner filed a response to the Order to Show Cause on November 14, 2023. Pet. Response to Order to Show Cause ("Pet. Response"), filed Nov. 14, 2023 (ECF No. 24). Petitioner also filed several witness declarations, a single Facebook post from September 3, 2020, and a supplemental affidavit. Pet. Exs. 9-14. Respondent filed a response on December 14, 2023. Resp. Response to Pet. Response ("Resp. Response"), filed Dec. 14, 2023 (ECF No. 27). Petitioner filed a reply on December 29, 2023. Pet. Reply Brief in Support of Pet. Response ("Pet. Reply"), filed Dec. 29, 2023 (ECF No. 29).

On April 27, 2026, the case was reassigned out of SPU to the undersigned. Notice of Reassignment dated Apr. 27, 2026 (ECF No. 33). A status conference was held May 7, 2026 so the undersigned could ask the parties how they wished to proceed and to determine whether Petitioner was still interested in having a fact hearing. Order dated May 7, 2026 (ECF No. 34). Petitioner's counsel requested time to discuss the matter with his client to determine how she wished to proceed. Id. The following week, on May 14, 2026, Petitioner filed a joint status report stating the parties requested that the Court issue a decision based on the evidence currently in the record as well as supporting responses to the Orders to Show Cause and briefs in the record. Joint Status Rept., filed May 14, 2026 (ECF No. 35). Thereafter, the record was closed.

This matter is now ripe for adjudication.

## II. RELEVANT FACTUAL HISTORY

### A. Medical and Therapy Records

Pre-vaccination records dated January 13, 2018 from Hand & Stone Massage note that Petitioner had no significant medical conditions, that she enjoyed working out, and that she had an accident on December 10, 2017. Pet. Ex. 5 at 6.

On August 24, 2020, Petitioner was a 40-year-old librarian at Beacon College when she went to urgent care after stepping on a roofing nail/tack. Pet. Ex. 8 at 2. Urgent care removed the roofing tack and Petitioner received a Tdap vaccine intramuscularly into her left deltoid. Id. at 3-5.

Eleven days after vaccination, on September 4, 2020, Petitioner returned to urgent care and reported there was a piece of the nail still in her foot. Pet. Ex. 8 at 6. The nail fragments were removed, and the wound was cleaned. Id. at 6-8. There is no mention of shoulder pain at this visit. See id.

On September 23, 2020, Petitioner presented to Ability Rehabilitation for left shoulder pain "[status post] fall." Pet. Ex. 3 at 162. Petitioner reported she fell after "losing her balance off an unstable surface when attempting to perform a stability exercise" and that her pain "increased for [one to two weeks], but [she] was able to workout with her symptoms with intermittent pain." Id. at 163. Petitioner further stated she "had a tetanus shot which she note[d] increased her shoulder pain [two weeks] ago, but soreness improved," but she did "not think [the vaccine] contributed to her shoulder pain." Id. On examination, Petitioner had reduced range of motion ("ROM") and difficulties raising her arm, reaching overhead, and pushing off the ground. Id. at 163-65. Assessment was "[left] shoulder pain [status post] fall." Id. at 165. She was prescribed physical therapy ("PT") twice a week for four weeks. Id.

When Petitioner presented to Ability Rehabilitation on September 23, 2020, she completed and signed a medical history form noting the date of her injury as August 20, 2020. Pet. Ex. 6 at 25, 52. For cause of injury, she circled "yes" for a fall. Id. at 25, 52, 54. Her reason for attending PT was a "fall injury." Id. at 25, 52.

On September 30, 2020, Petitioner attended her second PT session. Pet. Ex. 3 at 160. She reported she had been exercising, but she was limiting overhead movements when working out, per her PT recommendations. Id. During her session, Petitioner was able to perform the exercises correctly with "good form and no pain." Id. at 161.

On October 2, 2020, at her third PT session, Petitioner reported she was able to sleep the previous night without waking due to pain. Pet. Ex. 3 at 158. By her seventh PT session on October 21, 2020, Petitioner was able to reach overhead and perform activities of daily living. Id. at 146-48.

On November 2, 2020, Petitioner returned to urgent care with a chief complaint of "Fell/x-ray left shoulder." Pet. Ex. 8 at 11. Petitioner reported that "[three] months prior . . . [,] she was incorrectly using the weight bench. While trying to suspend herself to do a reverse crunch, [] the bench flipped." Id. Petitioner "fell on her left shoulder and the bench fell on top of her same shoulder." Id. Petitioner reported "immediate[] [] sharp pain" that radiated from her left shoulder down to her bicep. Id. She stated that her left shoulder had a "locking feeling." Id. After the accident, Petitioner began PT and had massages which helped to alleviate the pain. Id. Petitioner also reported "great relief of pain" with over-the-counter Advil; however, the pain continued to reoccur. Id. An X-ray revealed no abnormalities, and Petitioner was advised to follow up with an orthopedist. Id. at 12. Assessment was "[c]ontusion of left shoulder." Id.

On November 12, 2020, Ms. Reitz was seen by Dr. William W. Baldwin at Florida Sports Injury and Orthopedic Institute for her left shoulder pain. Pet. Ex. 4 at 14. Petitioner reported she "fell at [the] gym, [a] machine tipped over and landed on her [l]eft shoulder which led to her

pain and discomfort." Id. DOI (date of incident) was August 15, 2020.[4] Id. Petitioner also noticed that her ROM had changed, and even with PT, her ROM and pain worsened. Id. On examination, she had decreased ROM of the left shoulder. Id. at 15. Dr. Baldwin's assessment was adhesive capsulitis of the left shoulder and Petitioner was referred for a shoulder magnetic resonance imaging ("MRI"). Id. at 16.

On November 19, 2020, Petitioner returned to Dr. Baldwin for a follow-up and the results of her November 17, 2020 MRI. Pet. Ex. 4 at 7, 11-12. Petitioner's MRI revealed mild subacromial/subdeltoid bursitis, mild fraying extending to the posterior superior labrum, moderate osteoarthritis of the left acromioclavicular joint, and focal moderate tearing of the superior and posterior glenoid labrum. Id. at 7, 12. There was no fracture or dislocation noted. Id. Assessment remained adhesive capsulitis. Id. at 13. PT was recommended as well as a steroidal injection, which Petitioner declined. Id.

On January 21, 2021, Petitioner returned to Dr. Baldwin. Pet. Ex. 4 at 8. Petitioner reported that PT was "slightly improving the pain, strength[,] and [ROM]." Id. She still complained of "intermittent moderate pain" which was worse with certain movements and during sleep. Id. Dr. Baldwin again assessed Petitioner with adhesive capsulitis (frozen shoulder). Id. at 10. She again declined a steroidal injection and indicated that she would continue with PT. Id. In his treatment plan, Dr. Baldwin noted that Petitioner was a "very active fitness professional." Id.

From September 23, 2020 to March 31, 2021, Petitioner attended a total of 48 PT sessions for her left shoulder. Pet. Ex. 3 at 31-166; Pet. Ex. 6 at 3. In her PT records and notes, the date of onset is listed as September 8, 2020, approximately two weeks after her August 24, 2020 Tdap vaccination. See Pet. Ex. 3 at 31-166. At her last visit on March 31, 2021, she reported that her symptoms continued to occur with moving, lifting, and reaching. Id. at 31. The plan was to continue PT intermittently. Id. at 33. She was discharged from PT on May 28, 2021, because the services were "[n]o [l]onger [r]equired; Petitioner was not present on the date of discharge ("No Visit Discharge"). Pet. Ex. 6 at 3.

However, on the date of discharge, May 28, 2021, an initial evaluation was also documented. Pet. Ex. 6 at 4. Diagnosis was documented as adhesive capsulitis of the left shoulder, with a date of onset of May 25, 2021. Id. at 4, 14. Petitioner returned to PT because she felt "she ha[d] a little bit more mobility than before but [was] still unable to sleep on [left] side[] [and] ha[d] trouble dressing when reaching back and reaching behind back." Id. at 4. One PT session per month for four months was recommended. Id. at 7.

A medical history form completed and signed by Petitioner on May 28, 2021 documented a different date for onset of injury, August 24, 2020 (the date of vaccination). Pet. Ex. 6 at 12-13, 40. On the medical history form completed by Petitioner, she circled "no" for whether her injury was a result of a fall. Id. She also described her injury and reason for attending PT as "frozen shoulder after vaccine." Id.

[4] At each visit with Dr. Baldwin, his records note that the DOI was August 15, 2020. See Pet. Ex. 4 at 8, 11, 14.

At her next PT visit on June 24, 2021, date of onset was documented as May 25, 2021. Pet. Ex. 6 at 8, 35. Petitioner reported that "she ha[d] been able to continue working out" but had "rapid fatigue" in her left upper extremity during lifting. Id. No additional PT records were filed.

Petitioner received acupuncture and manual therapy from Blue Orchid on November 30, 2021 for shoulder pain syndrome, frozen shoulder, and bursitis. Pet. Ex. 7 at 5-7.

**B. Petitioner's Declaration**[5]

Petitioner submitted a declaration dated September 19, 2021. Pet. Ex. 2 at 9. In it, she explained that prior to vaccination, she was healthy and did not have any orthopedic issues in her left arm. Id. at ¶ 3. She received the Tdap vaccination on August 24, 2020 and described the pain and reduced ROM she experienced thereafter, along with the impact the injury has had on her life. Id. at ¶¶ 4, 7, 9-44. Petitioner averred that after vaccination, her arm felt "incredible sore." Id. at ¶ 10. She returned to urgent care on September 4 to have the remaining rust in her foot removed and thought the soreness was wearing off. Id. at ¶ 13. The following day, September 5, she was exercising at the gym and was unable to put a barbell behind her head, and described this as the first sign that she was experiencing loss of ROM. Id. at ¶ 14.

Subsequently, Petitioner began PT, but she did not improve, and her pain increased and ROM became more limited. Pet. Ex. 2 at ¶¶ 16-17. Petitioner detailed her medical care, treatment, and PT as well as the effect of her injury on her life and work, including her business walking and sitting for dogs and her personal trainer certification (though it is not clear whether she completed this program). See id. at ¶¶ 19-44. Petitioner is a "fitness enthusiast;" she works out every day and has a commercial grade gym in her home. Id. at ¶ 33. She has experienced significant frustration at being unable to perform her workouts and train at her prior level. Id. at ¶¶ 33-34, 37. The injury has affected her personal life, she has incurred significant medical bills, and her employment has also been affected. Id. at ¶¶ 35-36, 38-41.

Regarding her medical care prior to vaccination, Petitioner averred that she did not have a primary care physician for the three years prior to vaccination. Pet. Ex. 2 at ¶ 47.

In her declaration, Petitioner did not address the medical record entries in which she reported that she injured her left arm in a fall while working out. See generally Pet. Ex. 2.

**C. Facebook Post**

To support her claim, Petitioner filed a Facebook post, dated September 3, 2020, written by "Tiffany Kodjoe," who Petitioner claims is her pseudonym. Pet. Ex. 13 at 1; Pet. Ex. 14 at ¶ 3. In this post, Petitioner wrote, "A vaccine that has been around 80 years has left me with swelling and soreness in my arm 10 days after being vaccinated. I can't sleep on my arm, can't rest my arm on my elbow, wash the right side of my back, or workout without lingering pain." Pet. Ex. 13 at 1.

[5] Although titled an affidavit, the submission is not notarized, and therefore, it is referenced as a declaration.

### D. Witness Declarations[6]

#### 1. Demetria Griffiths Reid

Ms. Reid signed a declaration on June 6, 2023, stating that she is Petitioner's close friend and workout partner. Pet. Ex. 9 at 4, ¶ 2. Ms. Reid stated that she and Petitioner worked out at the gym every day since she first met Petitioner, until about a year before, when her work schedule changed, so that they were unable to work out together as often. Id. at ¶ 2. On August 24, 2020, Ms. Reid stated that she drove Petitioner to urgent care when Petitioner called her to state that she stepped on a nail. Id. at ¶ 4. Ms. Reid stated that when she was driving Petitioner home, she "mentioned that her left shoulder was hurting very badly because she had received a tetanus shot." Id. Ms. Reid stated that Petitioner continued to complain of left shoulder pain for the next week and "could not hold a barbell over her head because she had lost the [ROM] in her left arm." Id. at ¶ 5. Ms. Reid also stated in her declaration that "I knew anytime [Petitioner] was in pain or injured. I do not remember [Petitioner] having to modify or miss any workouts due to upper arm pain or a shoulder injury in the months leading up to August 24, 2020." Id. at ¶ 6.

#### 2. James Borden

Mr. Borden executed a declaration on September 11, 2023. Pet. Ex. 10. He is the Beacon College Director of Student Citizenship and Integrity and adjunct faculty member. Id. at ¶ 2. He has been a friend and coworker of Petitioner since September 2016. Id. at ¶ 3. Mr. Borden recalled that Petitioner told him she got a tetanus vaccine due to a foot injury where she stepped on a nail. Id. at ¶ 5. He stated, "I don't recall exactly when [Petitioner] first told me about her shoulder discomfort, but I recall a conversation where she told me that after the tetanus shot her shoulder started bothering her." Id. He added, "I also recall [Petitioner] telling me after her tetanus shot how much her shoulder was bothering her. She showed me how her arm was weak, and how little she could do compared to how much she used to do prior to her shot." Id. He "[did] not recall any other injury or accident that would have caused [Petitioner's] shoulder injury. She never mentioned any other reason she would have pain in her shoulder besides the tetanus shot." Id. at ¶ 7.

#### 3. Catherine Lutes

Ms. Lutes signed her declaration on September 12, 2023. Pet. Ex. 11 at 3. At the time she executed her declaration, she was working as an engineering business analyst at SECO Energy in Forida. Id. at ¶ 2. Ms. Lutes stated that in 2014, she became Petitioner's assistant in the library at Beacon College and worked closely with her every day until June 2021, when Petitioner lost her job. Id. at ¶ 3. In her declaration, Ms. Lutes stated,

> I was aware when [Petitioner] received her tetanus shot because the day after she received her vaccine, she came into work complaining about feeling very achy. When I saw [Petitioner] in person the morning after her vaccine, she complained that her arm hurt, she was achy, and she had a fever. [Petitioner] only worked

[6] Although titled as affidavits, these statements were not notarized, and therefore they are referenced as declarations.

> half a day the day after the vaccine and went home early that day. She said that she did not feel well and that her body was aching.

Id. at ¶ 5. Ms. Lutes stated that Petitioner complained of left shoulder pain for months after the vaccine. Id. at ¶ 6. She stated that Petitioner loved working out and would go to the gym nearly every day, which "kept her in good health." Id. at ¶ 7. Ms. Lutes added, "Since I worked very closely with [Petitioner], I knew everything that was happening in her life. I know that if there had been another incident that caused her pain, she would have complained to me about that pain before her vaccination." Id.

#### 4. Nina Garrett

Ms. Garrett signed her declaration on October 20, 2023. Pet. Ex. 12 at 3. Petitioner was her client at Hand & Stone Massage since November 2019. Id. at ¶ 2. Ms. Garrett provided massage treatments monthly. Id. at ¶ 3. After her tetanus vaccine, Petitioner complained of worsening shoulder pain. Id. at ¶ 5. Ms. Garrett would work directly on Petitioner's shoulder. Id. at ¶ 6. She recalled that it was close to a year before she got any improvement. Id. at ¶ 8. Petitioner specifically complained that "she was in pain from getting the vaccine." Id. at ¶ 9. Petitioner "did not have any pain or issue prior to receiving the vaccine in August 2020." Id. at ¶ 10.

## III. LEGAL STANDARDS

### A. Standards for Adjudication

The Vaccine Act was established to compensate vaccine-related injuries and deaths. § 10(a). "Congress designed the Vaccine Program to supplement the state law civil tort system as a simple, fair and expeditious means for compensating vaccine-related injured persons. The Program was established to award 'vaccine-injured persons quickly, easily, and with certainty and generosity.'" Rooks v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 1, 7 (1996) (quoting H.R. Rep. No. 908 at 3, reprinted in 1986 U.S.C.C.A.N. at 6287, 6344).

To receive compensation through the Program, Petitioner must prove either (1) that she suffered a "Table Injury"—i.e., an injury listed on the Vaccine Injury Table—corresponding to a vaccine that she received, or (2) that she suffered an injury that was actually caused by a vaccination. See §§ 11(c)(1), 13(a)(1)(A); Capizzano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1319-20 (Fed. Cir. 2006). Here, Petitioner primarily seeks to establish a Table claim, and she therefore must make a factual showing sufficient to meet the Table's relevant definitions, as set forth in the Table's Qualifications and Aids to Interpretation. § 14(b).

Petitioner's burden of proof is by a preponderance of the evidence. § 13(a)(1). The preponderance standard requires a petitioner to demonstrate that it is more likely than not that the vaccine at issue caused the injury. Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010). Proof of medical certainty is not required. Bunting v. Sec'y of Health & Hum. Servs., 931 F.2d 867, 873 (Fed. Cir. 1991). A petitioner who satisfies this burden is entitled to compensation unless Respondent can prove, by a preponderance of the evidence, that the vaccinee's injury is "due to factors unrelated to the administration of the vaccine." § 13(a)(1)(B).

### B. Factual Issues

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. § 13(a)(1)(A). To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. See Burns v. Sec'y of Health & Hum. Servs., 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records).

Contemporaneous medical records, "in general, warrant consideration as trustworthy evidence." Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). But see Kirby v. Sec'y of Health & Hum. Servs., 997 F.3d 1378, 1382 (Fed. Cir. 2021) (rejecting the presumption that "medical records are accurate and complete as to all the patient's physical conditions"); Shapiro v. Sec'y of Health & Hum. Servs., 101 Fed. Cl. 532, 538 (2011) ("[T]he absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance." (quoting Murphy v. Sec'y of Health & Hum. Servs., 23 Cl. Ct. 726, 733 (1991), aff'd per curiam, 968 F.2d 1226 (Fed. Cir. 1992))), recons. den'd after remand, 105 Fed. Cl. 353 (2012), aff'd mem., 503 F. App'x 952 (Fed. Cir. 2013). The weight afforded to contemporaneous records is due to the fact that they "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." Id. To overcome the presumptive accuracy of medical records, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." Sanchez v. Sec'y of Health & Hum. Servs., No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing Blutstein v. Sec'y of Health & Hum. Servs., No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)), mot. for rev. den'd, 142 Fed. Cl. 247 (2019), vacated on other grounds & remanded, 809 F. App'x 843 (Fed Cir. 2020).

Despite the weight afforded to medical records, special masters are not rigidly bound by those records in determining onset of a petitioner's symptoms. Valenzuela v. Sec'y of Health & Hum. Servs., No. 90-1002V, 1991 WL 182241, at *3 (Fed. Cl. Spec. Mstr. Aug. 30, 1991); see also Eng v. Sec'y of Health & Hum. Servs., No. 90-1754V, 1994 WL 67704, at *3 (Fed. Cl. Spec. Mstr. Feb. 18, 1994) (noting Section 13(b)(2) "must be construed so as to give effect also to § 13(b)(1) which directs the special master or court to consider the medical records (reports, diagnosis, conclusions, medical judgment, test reports, etc.), but does not require the special master or court to be bound by them").

## IV. ANALYSIS

### A. Petitioner Cannot Meet the SIRVA Table Elements

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a Tdap vaccine. Id. at § 100.3(a)(I)(C). The Vaccine Table's Qualifications and Aids to Interpretation ("QAI") establish criteria to be met for SIRVA. Id. at § 100.3(c)(10).

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation[,] or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
> (ii) Pain occurs within the specified time-frame;
> (iii) Pain and reduced [ROM] are limited to the shoulder in which the intramuscular vaccine was administered; and
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

Id. (emphasis omitted).

Of importance here, to prevail in a Table SIRVA claim, Petitioner must show there is "[n]o history of pain, inflammation[,] or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection." 42 C.F.R. § 100.3(c)(10)(i).

A review of the medical records demonstrates the following relevant facts. Petitioner received the Tdap vaccine in her left deltoid on August 24, 2020, at Urgent Care after she stepped on a nail in her yard. Petitioner returned to the same Urgent Care approximately two weeks later, on September 4, 2020, because a piece of the nail was still in her foot. She did not report shoulder pain during the second visit.

On September 23, 2020, one month post vaccination, Petitioner began PT. The record from this visit states,

> Patient presents to PT services with chief complaint of [left] shoulder pain, which they have been experiencing for the past month. Patient had a fall when losing her balance off an unstable surface when attempting to perform a stability exercise. Patient noticed that her pain increased for the next 1-2 w[ee]ks, but was able to workout with her symptoms with intermittent pain increases but dissipated quickly. Patient additionally had a tetanus shot which she notes increased her shoulder pain 2 w[ee]ks ago, but soreness improved and does not think this contributed to her shoulder pain.

Pet. Ex. 3 at 162-63. In the medical history form related to this visit, completed and signed by Petitioner, she identified the cause of her injury as a fall and the date of injury as August 20, 2020, four days prior to vaccination.

Moving forward, on November 2, 2020, Petitioner presented to Nurse Brenda Antoine Ranson at Urgent Care for complaint of "Fell/x-ray left shoulder." Pet. Ex. 1 at 3. History of present illness documented,

> [Three] months prior to this visit she was incorrectly using the weight bench. While trying to suspend herself to do a reverse crunch, [] the bench flipped. She fell on her left shoulder and the bench fell on top of her same shoulder. Immediately had sharp pain which radiated from shoulder down bicep. Left shoulder has a locking feeling and she began to have [PT] on her left shoulder as well as massages which have been proven beneficial for her pain. Medicates with [over-the-counter] Advil, providing great relief of pain, however pain reoccurs. Here for an x-ray to rule out possible bone spurs and fracture. Plans to obtain MRI.

Id. This note places onset three months prior to the visit, in early August 2020.

On November 12, 2020, Petitioner was seen by Dr. Baldwin at the Florida Sports Injury & Orthopedic Institute of complaints of "[l]eft [s]houlder pain." Pet. Ex. 4 at 14. The record from this visit summarized,

> [Petitioner] is a 40 year old female who presents to our office today as a new patient. She is being seen for pain in the left shoulder. Patient fell at the gym, machine tipped over and landed on her left shoulder which led to her pain and discomfort. Patient states she notice[d] that her ROM has change[d], started PT[,] pain increased and ROM worsen[ed].

Id. Dr. Baldwin documented the date of injury (DOI) as August 15, 2020.

These records show that three different health care providers, a Physical Therapist, Nurse Ranson at Urgent Care, and orthopedist Dr. Baldwin, independently recorded a consistent history reported by Petitioner attributing her left shoulder injury to a significant fall that occurred while working out the gym. These independent records were all created within three months of the date of the incident.

Further, these records document a date of injury in August 2020, before the date of Petitioner's Tdap vaccination. The PT records show date of injury as August 20, 2020. Urgent Care records state that the fall occurred three months prior to the date of the visit (November 2, 2020), placing onset approximately August 2, 2020. And Dr. Baldwin records date of onset as August 15, 2020.

Moreover, Petitioner's handwritten and signed medical and history form notes the date of injury was August 20, 2020.

Later-in-time records, the Facebook post, and declarations offer an inconsistent version of events, attributing the injury to her Tdap vaccine. However, the undersigned finds later records and Petitioner's assertions are less reliable than the more contemporaneous medical records. See Cucuras, 993 F.2d at 1528 (noting that "the Supreme Court counsels that oral testimony in conflict with contemporaneous documentary evidence deserves little weight");

Doe/70 v. Sec'y of Health & Hum. Servs., 95 Fed. Cl. 598, 608 (2010); Stevens v. Sec'y of Health & Hum. Servs., No. 90-221V, 1990 WL 608693, at *3 (Cl. Ct. Spec. Mstr. Dec. 21, 1990) (noting that "clear, cogent, and consistent testimony can overcome such missing or contradictory medical records"); Vergara ex rel. J.A.V. v. Sec'y of Health & Hum. Servs., No. 08-882V, 2014 WL 2795491, at *4 (Fed. Cl. Spec. Mstr. May 15, 2014) ("Special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those recorded in later medical histories, affidavits, or trial testimony."); Campbell v. Sec'y of Health & Hum. Servs., 69 Fed. Cl. 775, 779 (2006) ("It is, of course, true that where later testimony conflicts with earlier contemporaneous documents, courts generally give the contemporaneous documentation more weight."); Ricci v. Sec'y of Health & Hum. Servs., 101 Fed. Cl. 385, 391 (2011) ("Medical records from years later, merely chronicling a timeline between vaccination and injury, are not worthy of the same consideration as contemporaneous records."); see also, e.g., Rote v. Sec'y of Health & Hum. Servs., No. 90-036V, 1992 WL 165970, *5 (Cl. Ct. Spec. Mstr. July 1, 1992) (finding the lay witness testimony insufficient to overcome the weight of the contemporaneous medical records); Bergman v. Sec'y of Health & Hum. Servs., No. 90-1252V, 1992 WL 78671, *4 (Cl. Ct. Spec. Mstr. Mar. 31, 1992) (same); Daiza v. Sec'y of Health & Hum. Servs., No. 90-1188V, 1992 WL 59709, *4 (Cl. Ct. Spec. Mstr. Mar. 5, 1992) (same).

Therefore, the undersigned makes two factual findings. The first is that Petitioner's shoulder injury was caused by an exercise related fall at the gym, as described in the most contemporaneous medical records, and not her vaccination. Petitioner had mild soreness after her vaccination, but her soreness resolved, and Petitioner herself stated that she did not believe that her vaccine contributed to her shoulder pain.

The second finding is that the date of the fall and onset of Petitioner's shoulder pain occurred prior to her vaccination on August 24. Onset was one of the following dates in August prior to vaccination: August 2 (based on report to Nurse Ranson), August 15 (report to Dr. Baldwin), or August 20 (medical history completed and signed by Petitioner).

Thus, as the record now stands, there is not preponderant factual evidence that Petitioner's injury was caused by the Tdap vaccine she received on August 24, 2020. Further, onset occurred prior to vaccination. As stated earlier, to prevail in a Table SIRVA claim, Petitioner must show that she did not have a history of pain or dysfunction of her left shoulder prior to the Tdap vaccine that could explain her signs, symptoms, examination findings, and diagnostic studies occurring after vaccination. See 42 C.F.R. § 100.3(c)(10)(i). Here, Petitioner's records show that the date of injury began prior to vaccination and the cause of injury was an exercise-related fall that preceded vaccination.

Therefore, the undersigned finds that Petitioner has failed to prove by preponderant evidence that she meets the criteria for a Table SIRVA claim.

### B. Petitioner's Causation-in-Fact Claim Also Fails

Petitioner's causation-in-fact claim for a shoulder injury also fails because the cause of injury was an exercise related fall and not vaccination. Further, as noted above, the most contemporaneous medical records show that onset of Petitioner's injury prior to her vaccination.

In order to recover under the Vaccine Act, a petitioner must show that she has a cognizable vaccine injury, that is, that the injury was caused by a vaccine.

A petitioner's claim is premised on first establishing the underlying existence of an injury that could be attributable to a vaccination; an inability to do is fatal to a claim. Broekelschen v. Sec'y of Health & Hum. Servs., 618 F.3d 1339, 1346, 1349 (Fed. Cir. 2010). Thus, without a cognizable illness or injury that could be attributed to vaccination in any manner other than temporally (a well-recognized insufficient basis for entitlement in the Program), this petition cannot proceed. Bunting, 931 F.2d at 873.

Here, the undersigned finds preponderant evidence establishes that Petitioner injury was caused, not by a vaccine, but by an exercise related fall. Thus, it is not vaccine-related for the reasons described above.

## V. CONCLUSION

Petitioner has failed to provide preponderant evidence that she suffered a Table SIRVA injury or causation-in-fact SIRVA. Further, she has failed to show by preponderant evidence that her injury was caused by a vaccine, and not a fall. Accordingly, this case is **DISMISSED** for insufficient proof.

In the absence of a timely filed motion for review pursuant to Vaccine Rule 23, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[7]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.